IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:    JENNIFER LYNNE FLETCHER, and<br>MATTHEW CRAMOND FLETCHER,<br><br>         Debtors. | Case No. 18-34654-KRH<br>Chapter 7 |

### MEMORANDUM OPINION

Before the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") is the *Motion to Convert Chapter 7 to Chapter 13 Under Section 706(a)* [ECF No. 23] (the "Motion to Convert") filed by Jennifer Fletcher ("Mrs. Fletcher") and Matthew Fletcher ("Mr. Fletcher" and together with Mrs. Fletcher, the "Debtors") in this Chapter 7 bankruptcy case (the "Current Case"). For the reasons set forth below, the Court grants the Motion to Convert with respect to Mr. Fletcher but finds that Mrs. Fletcher is ineligible to be a debtor in bankruptcy. Therefore, the Court denies the Motion to Convert as to Mrs. Fletcher and dismisses her from the Current Case.

### Background and Procedural History

On August 2, 2016, Mrs. Fletcher, by counsel, filed a voluntary petition in this Court under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing case number 16-33816-KRH (the "Prior Chapter 13 Case"). Mr. Fletcher was not a debtor in the Prior Chapter 13 Case.

On February 20, 2017, Lakeview Loan Servicing, LLC ("Lakeview") filed a Motion for Relief from Automatic Stay and Co-Debtor Stay Pursuant to 11 U.S.C. § 1301 (C)(3) [Case No. 16-33816-KRH, ECF No. 39] (the "Motion for Relief from Stay") in the Prior Chapter 13 Case, seeking relief with respect to certain real property located at 10004 Erlwood Court,

Fredericksburg, VA 22407 (the "Real Property"). To resolve the Motion for Relief from Stay, on April 6, 2017, the Court entered an *Order Modifying Automatic Stay and Co-Debtor Stay* [Case No. 16-33816-KRH, ECF No. 43] (the "Consent Order").

The Consent Order provided a payment schedule for the cure of a post-petition arrearage and required the regular contractual payments be maintained on the Real Property. In the event of a subsequent payment default, the Consent Order permitted Lakeview to "mail a notice of default to the debtor." Consent Order at ¶ 3.[1] If Mrs. Fletcher failed to cure the default within the requisite time period, Lakeview could then submit a certificate attesting to such failure "together with . . . a draft order terminating the automatic stay" for the Court's consideration. *Id.* at ¶ 3.

On December 21, 2017, Lakeview filed a *Notice of Default* [Case No. 16-33816-KRH, ECF No. 49], alleging that Mrs. Fletcher was in default of the Consent Order. But Lakeview did not file a certificate of default, and no order terminating the automatic stay or co-debtor stay was entered in the Prior Chapter 13 Case.[2] Nevertheless, Lakeview proceeded to commence foreclosure proceedings. In order to halt the forced sale of their home, the Debtors filed a joint voluntary petition commencing the Current Case on September 12, 2018. *See* Mot. Convert ¶ 2, ECF No. 23 (conceding the Debtors filed the Current Case "[o]n the eve of a foreclosure" by Lakeview).

Five days after the Current Case was filed, Mrs. Fletcher filed a *Notice of Dismissal of Case Under Section 1307(b)* [ECF No. 51] in the Prior Chapter 13 Case, asking the Court to

---

[1] The Consent Order required certain information to appear in the notice of default, including that Mrs. Fletcher or the Chapter 13 trustee had fourteen days to either "cure the default; file an objection with the court stating that no default exists; or file an objection with the court stating any other reason why an order granting relief from the automatic stay should not be entered." *Id.* at ¶¶ 3(d)(i) – (iii).

[2] Instead, on February 8, 2018, Lakeview filed a pleading entitled *Notice of Stay Termination* [Case No. 16-33816-KRH, ECF No. 50], which had no legal effect.

enter an order "dismissing her case and closing the estate as soon as practicable." This matter was never brought to the Court's attention or set for hearing, and no proposed dismissal order was submitted to the Court. Five months later, on February 6, 2019, Mrs. Fletcher filed a second *Notice of Dismissal of Case Under Section 1307(b)* [ECF No. 53] (the "Motion to Dismiss"), asking the Court for the same relief.[3] This time, the matter was properly set for hearing on March 27, 2019, following which the Court entered an order dismissing the Prior Chapter 13 Case.[4]

The same day Mrs. Fletcher filed her second Motion to Dismiss the Prior Chapter 13 Case, the Debtors filed the Motion to Convert in the Current Case. The Debtors seek to convert the Current Case to one under Chapter 13 of the Bankruptcy Code pursuant to section 706(a). On April 3, 2019, the Court held a hearing on the Motion to Convert. At the conclusion of the hearing, the Court took the matter under advisement, with the Debtors to submit supplemental briefing on whether section 109(g)(2) of the Bankruptcy Code barred Mrs. Fletcher from being a debtor in the Current Case, regardless of chapter. The Debtors submitted their memorandum of law[5] and an accompanying affidavit[6] on April 9, 2019.

---

[3] The Motion to Dismiss stated that the Current Case was filed on the eve of a foreclosure, necessitating the dismissal of the Prior Chapter 13 Case. Mot. Dismiss ¶ 2.

[4] Order Dismiss Case Under Sec. 1307(b), *In re Fletcher*, No. 16-33816-KRH (Bankr. E.D. Va. Apr. 1, 2019), ECF No. 55. At the hearing on the Motion to Dismiss, the Court raised several concerns with Mrs. Fletcher simultaneously being a debtor in both the Prior Chapter 13 Case and the Current Case. *See, e.g.*, *In re Parson*, No. 01–73786–SCS, 2007 WL 3306678 at *12 (Bankr. E.D. Va. Nov. 6, 2007) (adopting the "single estate rule," which prohibits simultaneous proceedings, to deny a motion to reopen a Chapter 7 case where the debtors already had a Chapter 13 case open). Ultimately, because no party objected to the relief requested, the Court granted the Motion to Dismiss.

[5] Mem. Suppl. Debtors' Args. Waiver 11 U.S.C. Sec. 109(g)(2), ECF No. 31 [hereinafter Waiver Mem.].

[6] Fletchers' Aff., ECF No. 31.

## Analysis

Section 706 controls the conversion of a Chapter 7 case to a case under another chapter of the Bankruptcy Code. Subsection (a) of section 706 provides, in relevant part, that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307." 11 U.S.C. § 706(a). Notwithstanding subsection (a), "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *Id.* § 706(d). Accordingly, a debtor's right to convert a case to chapter 13 is expressly conditioned on a debtor's "ability to qualify as a 'debtor' under Chapter 13." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007). To qualify as a debtor, one must meet the eligibility requirements under section 109 of the Bankruptcy Code. *See id.* An attempt to convert a Chapter 7 case to a Chapter 13 case by a debtor who is not eligible to proceed under Chapter 13 is "void *ab initio.*" *Bobroff v. Cont'l Bank (In re Bobroff)*, 766 F.2d 797, 803 (3d Cir. 1985) (emphasis in original).

Section 109 governs "[w]ho may be a debtor." 11 U.S.C. § 109. Subsection (g) applies to cases under all chapters and provides in pertinent part:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
> \*\*\*\*\*
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

*Id.* § 109(g)(2).[7] In interpreting section 109(g)(2) of the Bankruptcy Code, courts have followed one of three approaches: an equitable approach, a strict approach, or a causal approach.

---

[7] The Debtors attempt to draw a distinction between the treatment of "simultaneous" filers and "serial" filers under section 109(g). Waiver Mem., *supra* note 5, at 1. They argue that "[t]he bar contained in 11 USC 109(g) . . . was added to the Code in 1983 to deal with the abuse of bankruptcy by debtor filing *serial* bankruptcy cases to avoid

4

In *In re Sole*, Judge Adams of this Court considered all three of these competing approaches to interpreting section 109(g)(2). 233 B.R. 347, 348-50 (Bankr. E.D. Va. 1998). The Court noted that interpretation of section 109(g)(2) had "not been addressed by the Fourth Circuit, nor ha[d] the matter been clarified by the District or Bankruptcy Courts for the Eastern District of Virginia." *Id.* at 348. Judge Adams explained first the equitable approach, which he observed requires "balancing the equities" of a case. *Id.* at 348-49; *see also In re Brown*, 534 B.R. 673, 676 (Bankr. E.D. Va. 2015). Courts using the equitable approach avoid applying section 109(g)(2) to limit debtor eligibility in cases where doing so would produce "absurd results that could not have been intended by Congress." *In re Howard*, 311 B.R. 230, 232 (Bankr. E.D. Wis. 2004).

Judge Adams turned next to the strict approach, which applies the plain language of section 109(g)(2) to "dictate[ ] a broad rule of dismissal." *In re Sole*, 233 B.R. at 349 (citing *Andersson v. Sec. Fed. Sav. & Loan of Cleveland* (*In re Andersson*), 209 B.R. 76 (B.A.P. 6th Cir. 1997); *In re Keziah*, 46 B.R. 551 (Bankr. W.D.N.C. 1985)). Courts that have adopted the strict approach hold that section 109(g)(2)'s eligibility constraint "is triggered anytime a voluntary dismissal follows the filing of a motion for relief." *Id.* at 348. Finally, Judge Adams turned to the causal approach, which looks for a "causal connection between the motion for relief and the dismissal of the case." *In re Brown*, 534 B.R. at 676. Judge Adams cited *First Nat'l Bank of Rocky Mount v. Duncan* (*In re Duncan*), where

> [t]he court concluded that the proper approach to Section 109(g)(2) is to examine the circumstances surrounding a creditor's motion

---

foreclosure" but "we do not find an explicit prohibition in the Bankruptcy Code for *simultaneous* filings." *Id.* (emphases in original). This distinction misses the mark. Section 109(g) does not distinguish between simultaneous and successive petitions. It is of no moment under section 109(g) whether the second petition is filed while the prior case is still open. Thus, the Court determines whether section 109(g) excludes the Debtors as debtors under the Bankruptcy Code without the need to consider the timing of the filing of the Current Case and the Prior Chapter 13 Case.

5

> for relief from stay and a debtor's subsequent motion to dismiss. If the examination reveals that the debtor was acting in response to the motion for relief from stay, then the debtor is barred by the terms of Section 109(g)(2) from being a debtor under Title 11 for 180 days. If, on the other hand, the examination reveals some other reason for the debtor's motion to dismiss, apart from an effort to thwart a creditor's valid exercise of its rights, then the Court should deny the creditor's motion to dismiss.

*In re Sole*, 233 B.R. at 350 (citing *In re Duncan*, 182 B.R. 156, 159 (Bankr. W.D. Va. 1995)).

Judge Adams was "convinced that this latter interpretation of Section 109(g)(2), rather than a strict interpretation, reflects both Congressional intent and the most natural and obvious reading of the statute." *Id.* The court held that "on a motion to dismiss based upon Section 109(g)(2) we will look for a causal connection between a motion for relief from the automatic stay and a debtor's subsequent request and receipt of a voluntary dismissal. Absent a causal connection, section 109(g)(2) is not triggered." *Id.* Utilizing this approach, the Court denied the trustee's motion to dismiss, finding "no causal connection between the agreed relief from stay and the much later voluntary dismissal of the debtors' first case." *Id.*

Since the issuance of the *Sole* decision, neither the District Court for the Eastern District of Virginia nor the Fourth Circuit have addressed the issue.[8] The United States Bankruptcy Court for the Northern District of West Virginia found it "likely" that the Fourth Circuit would adopt the causal approach. *In re Combs*, 587 B.R. 481, 485-86 (Bankr. N.D. W. Va. 2018) (citing *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 259 (4th Cir. 2007)). In light of this precedent, this Court will adopt the causal approach to the interpretation of section 109(g)(2).

Turning to the facts of the Current Case, there is no question that Mr. Fletcher has the right to convert his bankruptcy case to Chapter 13. Accordingly, the Court grants the Motion to

---

[8] Judge Phillips of this Court touched on the issue in *In re Brown*, but did not endorse any of the three approaches because "[u]nder any of the three approaches to the application of § 109(g)(2) discussed herein, the Debtor would not qualify for a waiver [of the eligibility requirement] . . . [and] the case must be dismissed." 534 B.R. at 678.

6

Convert with respect to Mr. Fletcher. Whether Mrs. Fletcher may convert her bankruptcy case depends on whether she is ineligible to be a debtor under section 109(g)(2). If the Court finds that section 109(g)(2) does apply, then not only is Mrs. Fletcher unable to convert her case, Mrs. Fletcher will not be able to proceed in the Current Case under any chapter.

Mrs. Fletcher requested and obtained the voluntary dismissal of the Prior Chapter 13 Case approximately two years after Lakeview filed its Motion for Relief from Stay. Thus, Mrs. Fletcher meets the plain language of section 109(g)(2). But under the causal approach to section 109(g)(2), the Court must look "for a causal connection between a motion for relief from the automatic stay and a debtor's subsequent request and receipt of a voluntary dismissal" in order to determine if Mrs. Fletcher is eligible to be a debtor in the Current Case. *In re Sole*, 233 B.R. at 350.

A causal connection undoubtedly exists between the Motion for Relief from Stay and Mrs. Fletcher's voluntary dismissal of the Prior Chapter 13 Case. The Motion for Relief from Stay resulted in the Court's entry of the Consent Order on April 6, 2017. Mrs. Fletcher defaulted under the terms of the Consent Order, so Lakeview allegedly attempted to foreclose on the Real Property.[9] The Debtors filed the Current Case on the night before the scheduled foreclosure.[10] As the debtors in *In re Combs* conceded in their motion to extend the automatic stay, 587 B.R. at 484, 486 & n.6, the Debtors here readily concede that they filed the Current Case "to get a little bit more time in the house."[11] And like the debtor in *In re Brown*, 534 B.R. at 675, counsel for

---

[9] As no order terminating the automatic stay was ever filed in the Prior Chapter 13 Case, any steps Lakeview took to foreclose upon the Real Property were improper and in violation of the Consent Order, the automatic stay of section 362(a), and the co-debtor stay of section 1301. As this issue is not currently before the Court, it will not be further addressed herein.

[10] Mot. Convert ¶ 2, ECF No. 23.

[11] Fletchers' Aff., ECF No. 31.

7

the Debtors volunteered in open court that the Debtors filed the Current Case because their "house was up for foreclosure the next day."[12]

The Debtors do correctly point out that the Court may consider the "length of time between events" in determining whether a causal connection exists between a motion for relief from the automatic stay and a motion to voluntarily dismiss.[13]  Similar to *Sole*, almost two years lapsed between the initial request for relief from stay and the voluntary dismissal.  233 B.R. at 350.  But in *Sole*, there was "no causal connection between the agreed relief from stay and the much later voluntary dismissal of the debtors' first case."  *Id.*  The motion for relief from stay was resolved by consent, and the debtors did not file their motion to voluntarily dismiss to delay an impending foreclosure or inhibit any other threatened action by the creditor.  *Id.*  On the facts of this case, where there is direct causal connection between the Motion for Relief from Stay and the Motion to Dismiss, the length of time does not negate that connection.

The timeline of events in this case and the admissions made by the Debtors establish a direct causal connection between the Motion for Relief from Stay, the impending foreclosure, the filing of the Current Case, and Mrs. Fletcher's voluntary dismissal of the Prior Chapter 13 Case.  This connection is precisely what section 109(g)(2) was enacted to prevent.  The statute not only bars Mrs. Fletcher from asserting her right to convert this case but also from being a debtor under the Bankruptcy Code.[14]

---

[12] Not. Dismissal Case Under Sec. 1307(b) Hr'g at 12:18:51, *In re Fletcher*, No. 16-33816-KRH (Bankr. E.D. Va. Mar. 27, 2019).

[13] Waiver Mem., *supra* note 5, at 3.

[14] By their Waiver Memorandum, the Debtors incorrectly assert waiver of section 109(g)(2) is appropriate based upon the facts of this case.  The relevant facts were fixed at the time the Prior Chapter 13 Case was dismissed. While it may have been more efficient and desirable for the Debtors to continue in a joint case, the Debtors' present intention to obtain a loan modification and fully address a new motion for relief from stay in the Current Case does nothing to refute the causal connection, prohibited under section 109(g)(2), between the Motion for Relief from Stay and Mrs. Fletcher's voluntary dismissal of the Prior Chapter 13 Case.

**Conclusion**

For the foregoing reasons, Mr. Fletcher is eligible to convert the Current Case under section 706(a), but Mrs. Fletcher is ineligible to convert the Current Case and ineligible to be a debtor in bankruptcy under section 109(g)(2). Therefore, the Court will issue a separate order granting the Motion to Convert with respect to Mr. Fletcher but denying the Motion to Convert with respect to Mrs. Fletcher and dismissing her from the Current Case.

Dated:    April 23, 2019                  /s/ Kevin R. Huennekens
                                                      United States Bankruptcy Judge

Entered on Docket: April 23, 2019